UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARQUETTE COUNTY ROAD
COMMISSION,

        Plaintiff,        Case No. 2:15-cv-93

v.        Honorable Robert Holmes Bell

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, et al.,

        Defendants.
_____/

**OPINION**

On May 18, 2016, the Court granted Defendants' motion to dismiss for failure to state a claim against the Environmental Protection Agency ("EPA") because the EPA's actions were not reviewable under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551 *et seq*. (ECF No. 28.) The matter is before the Court on Plaintiff's motion for reconsideration in light of the Supreme Court's decision in *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807 (2016). (ECF No. 31.)

**I.**

Because the Federal Rules of Civil Procedure do not provide expressly for motions for reconsideration, courts customarily treat them as motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e). *See Huff v. Metro. Life Ins. Co.*, 678 F.2d 119, 122 (6th Cir. 1982) ("The district court properly treated the motion to reconsider as a motion

under Rule 59 to alter or amend judgment."). The Rule provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "A district court may grant a Rule 59(e) motion only to (1) correct a clear error of law, (2) account for newly discovered evidence, (3) accommodate an intervening change in the controlling law, or (4) otherwise prevent manifest injustice." *Moore v. Coffee Cty., TN*, 402 F. App'x 107, 108 (6th Cir. 2010). "Rule 59(e) . . . does not permit parties to effectively re-argue a case." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008).

To succeed on a motion for reconsideration, Plaintiff must "not only demonstrate a palpable defect by which the Court and the parties have been misled, but also show that a different disposition of the case must result from a correction thereof." W.D. Mich. LCivR 7.4(a). "A defect is palpable if it is easily perceptible, plain, obvious, readily visible, noticeable, patent, distinct or manifest." *Witherspoon v. Howes*, No. 1:07-cv-981, 2008 WL 4155350, at *1 (W.D. Mich. Sep. 5, 2008) (citing *Compuware Corp. v. Serena Software Int'l, Inc.*, 77 F. Supp. 2d 816, 819 (E.D. Mich. 1999)). The decision to grant or deny a motion for reconsideration under this Local Rule falls within the district court's discretion. *See Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 691 (6th Cir. 2012). A motion for reconsideration presents an opportunity for the Court to address an erroneous factual conclusion, because the Court overlooked or misconstrued the record, or to correct a misunderstanding of the law, because the Court applied the wrong standard, wrong test, relied on bad precedent, or something similar. *Fleet Eng'rs, Inc. v. Mudguard Tech., LLC*, No. 1:12-CV-1143, 2013 WL 12085183, at *1 (W.D. Mich. Dec. 31, 2013). Disagreement

with the Court's interpretations of facts, or applications of the correct law, rarely provide a sound basis for a motion for reconsideration. *Id.*

## II.

The APA authorizes judicial review of "final agency action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704. There are two conditions that must be satisfied in order for an agency action to be considered final under the APA. First, "the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Second, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* However, "[e]ven if final, an agency action is reviewable under the APA only if there are no adequate alternatives to APA review in court." *Hawkes*, 136 S. Ct. at 1815.

Plaintiff relies upon *Hawkes*, a recent Supreme Court decision, to argue that this Court's opinion contains a palpable defect, and that a different disposition of the case must result from a correction thereof. In *Hawkes*, the Supreme Court held that an approved jurisdictional determination ("JD"), which definitively stated the presence or absence of waters of the United States on a particular property, was a final agency action. *Hawkes*, 136 S. Ct. at 1813. Under *Bennett*'s first prong, the Supreme Court held that an approved JD "clearly 'mark[ed] the consummation' of the Corps' decisionmaking process on that question." *Id.* Further, "the definitive nature of approved JDs also [gave] rise to 'direct and appreciable legal consequences,' thereby satisfying the second prong of *Bennett*[.]" *Id.* at

3

1814 (quoting *Bennett*, 520 U.S. at 178). The Supreme Court also held that the two alternatives to direct judicial review of an approved JD—either discharge fill material without a permit, risking an EPA enforcement action, or apply for a permit and seek judicial review if dissatisfied with the results—were not adequate. *Id.* at 1815. Therefore, an approved JD was a reviewable final-agency action. *See id.* at 1816 (affirming Eighth Circuit judgment).

### A. Consummation of the agency's decisionmaking process

In its motion, Plaintiff equates the EPA's objections with an approved JD. An approved JD is issued after extensive fact-finding by the Corps, and is typically not revisited if the permitting process moves forward. *Id.* at 1814. Although not dispositive, the Corps has described approved JDs as final agency action. *See* 33 CFR § 320.1(a)(6); *Hawkes*, 136 S. Ct. at 1814; *see also Nat'l Assoc. of Home Builders v. U.S. E.P.A.*, 956 F. Supp. 2d 198, 210 (D.C. Cir. 2015). Likewise, the Supreme Court has held that approved JDs are definitive rulings by the Corps. *Id.*

Here, Plaintiff argues that, after permitting authority transfers to the Corps, there is nothing left for the EPA to do. That is not entirely accurate. Indeed, once permitting authority transfers to the Corps, the EPA lacks authority to withdraw its objections and return permitting authority to the state. *See Friends of Crystal River v. U.S. E.P.A.*, 35 F.3d 1073, 1080 (6th Cir. 1994) ("[T]he [Clean Water Act] specifically provides a time limit in which a state must comply with EPA objections. A failure on the part of the state to so conform within the statutory time limit results in the transfer of authority to the Army Corps.

Consequently, we conclude Congress intends to completely divest the original agency of jurisdiction, and vest authority in the Army Corps following expiration of the deadline.").

Nonetheless, the EPA's involvement in the permitting process continues even after the Corps has permitting authority.  Under § 404(b), a permit issued by the Corps must specify the disposal sites for dredged or fill material, and § 404(c) permits the EPA Administrator to "prohibit the specification . . . of any defined area as a disposal site . . . whenever he determines, after notice and opportunity for public hearings, that the discharge of such materials into such area . . . will have an unacceptable adverse effect[.]" 33 U.S.C. § 1344(c); *see also* C.F.R. § 323.6(b) (implement § 1344(c)).  Thus, the EPA has statutory authority to object to the permit's specification of a defined area as a disposal site.  Further, when the Corps reviews a permit application, it will likely seek input from the EPA.  *See* 33 C.F.R. § 384.5 (noting that Corps officials consult with and seek advice from all other substantially-affected federal agencies).

Plaintiff urges the Court to review the actions of the EPA and the Corps separately.  The APA defines "agency" to mean "each authority of the Government of the United States, whether or not it is within or subject to review by another agency[.]" 5 U.S.C. § 551(1).  It defines "agency action" to include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]"  5 U.S.C. § 551(13).  Plaintiff argues that, Congress's use of the word "each" shows that, for the purpose of determining final agency action, the EPA is to be regarded and treated separately from the Corps.  *See* Oxford English Dictionary 16 (2d ed. 1989) (defining each to mean "every

(individual of a number) regarded or treated separately"). Further, Congress's use of the phrase "whether or not it is within or subject to review by another agency" supports this approach. However, looking solely at the EPA, its involvement is not complete once permitting authority transfers to the Corps; it retains veto power under § 404(c).

Moreover, Plaintiff's interpretation would contravene congressional intent by essentially ignoring the Corps' permitting authority to allow applicants immediate access to judicial review. The Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*, draws a clear distinction between final agency actions that resolve the permitting process—the issuance or denial of the permit by either the state or the Corps—and intermediate actions that require its continuation—the EPA's objections and the failure of the state to timely issue or deny the permit. *See Crystal River*, 35 F.3d at 1079. Congress created an ongoing permitting process, the final result of which is the issuance or denial of a permit, not the EPA's objections. Further, both the Corps is not bound by these objections. Rather, these objections are simply "advisory in nature" and do not resolve the pending permit request. *See Hawkes*, 136 S. Ct. at 1813 (noting the difference between an approved JD and a preliminary JD).

In addition, *Bennett*'s first prong was not at issue in *Hawkes*. *Hawkes*, 136 S. Ct. at 1813 ("[T]he Corps [did] not dispute that an approved JD satisfie[d] the first *Bennett* condition."). As such, *Hawkes* does not provide an intervening change in controlling law with respect to this prong. Therefore, Plaintiff has failed to satisfy its burden of demonstrating a palpable defect by which the Court and the parties were misled, and it has not shown that a different disposition of the case must result.

### B. Legal consequences

To determine whether there was a legal consequence under *Bennett*'s second prong, the Supreme Court has examined whether the opposite result would have a legal consequence. *Hawkes*, 136 S. Ct. at 1814. An affirmative JD was at issue in *Hawkes*. The Court assessed whether a negative JD, a determination that a property did not contain waters of the United States, had legal consequences. Under a Corps and EPA memorandum of agreement, a negative JD was binding on both agencies, "creating a five-year safe harbor from [enforcement] proceedings [under the CWA] for a property owner." *Id.* at 1814. Thus, the Court held that, because an affirmative JD represented the denial of the five-year safe harbor that negative JDs afford, an affirmative JD had legal consequences. *Id.* (citing 5 U.S.C. § 551(13)).

Plaintiff analogizes a negative JD to the situation where the EPA concurs with the state's issuance of a proposed § 404 permit. If the EPA concurs, the applicant would receive a state permit, with the force and effect of both state and federal law, which is binding for five years. Likewise, Plaintiff argues that the EPA's objections had real and appreciable legal consequences because the EPA deprived Plaintiff of the proposed state permit and obligated Plaintiff to go through the Corps' permitting process. Similar to an affirmative JD, the EPA's objections divested Plaintiff of the permit proposed by the state and created the need for Plaintiff to seek a permit from the Corps.

Defendant argues that delaying or requiring an applicant to continue through the full administrative process is not a legal consequence. Further, the situation in *Hawkes* is

distinguishable from the permitting process at issue here.  In *Hawkes*, as a result of the memorandum of agreement, a negative JD bound both agencies to a five-year safe harbor from enforcement proceedings.  *Hawkes*, 136 S. Ct. at 1814.  Thus, a negative JD "both narrow[ed] the field of potential plaintiffs and limit[ed] the potential liability a landowner faces for discharging pollutants without a permit.  Each of those effects is a 'legal consequence[]' satisfying the second *Bennett* prong."  *Id.*  Consequently, an affirmative JD, which was also binding for five years, amounted to a conclusive denial of that five-year safe harbor period.

In contrast, here, Plaintiff's permit has not been denied.  In Plaintiff's own words, the EPA's objections "created the need for Plaintiff to seek a permit from the Corps."  (ECF No. 32, PageID.2017.)  This is not a legal consequence.  *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242 (1980) (noting that complying with administrative proceedings "is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action").  Plaintiff must simply continue with the administrative process.  There has been no conclusive denial of the permit.  In fact, there has been no definitive decision by any permitting authority as to whether, or under what conditions, Plaintiff should receive a permit.  Therefore, Plaintiff has failed to show a palpable defect upon which the Court was misled and whose correction requires a different disposition in the case.

### C. Adequacy of alternatives

Plaintiff also argues that the availability of obtaining a permit from the Corps is

relevant to the Court's determination of whether there exists an adequate alternative remedy at law. Plaintiff relies on *Hawkes* to argue that obtaining a permit from the Corps is not an adequate alternative. In *Hawkes*, the Supreme Court held that "it [was not] an adequate alternative to APA review for a landowner to apply for a permit and then seek judicial review in the event of an unfavorable decision [of a JD]." *Hawkes*, 136 S. Ct. at 1815. Plaintiff relies upon the Supreme Court's language that the Corps' process can be "arduous, expensive, and long" to argue that a Corps permit is not an adequate alternative remedy to judicial review. *See id.* at 1815.

Again, *Hawkes* is distinguishable from this case. In the event of an unfavorable decision regarding a JD, the landowner could apply for a permit and seek judicial review of its denial. The permit was a separate, alternative remedy to the JD decision. Here, the permit itself is at issue. In other words, a permit from the Corps is not an alternative; it is the very thing that Plaintiff sought from the state. Accordingly, Plaintiff has failed to demonstrate a palpable defect, in light of *Hawkes*, whose correction requires a different disposition of the case.

### D. Other grounds for reconsideration

Plaintiff's remaining claims simply raise the same arguments that this Court has already rejected. Under Local Rule 7.4(a), the Court need not address the substance of these arguments. W.D. Mich. LR 7.4(a) ("[M]otions for reconsideration which merely present the same issues ruled upon by the Court shall not be granted."). Therefore, the Court denies Plaintiff's motion for reconsideration of those claims. *See, e.g., Savage v. United States*, 102

F. App'x 20, 22-23 (6th Cir. 2004) (affirming the district court's denial of a motion for reconsideration because the movant "essentially reasserted the issues raised" previously); *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385-86 (6th Cir. 2004) (affirming the district court's denial of the motion for reconsideration because it "merely raised arguments that were already ruled upon; it failed to show either a reason justifying relief from the judgment or a palpable defect by which the court was misled").

### IV.

The Supreme Court has instructed courts to apply the APA's finality requirement in a "flexible" and "pragmatic" way. *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-50 (1967). But this flexible and pragmatic approach should not be used to contravene the administrative process that Congress created in the CWA. Plaintiff relies on the presumption of judicial review of agency action, but that presumption applies only to *final* agency action. *Hawkes*, 136 S. Ct. at 1811 (quoting *Sackett v. EPA*, 132 S. Ct. 1367, 1373 (2012)).

Further, *Hawkes* did not fundamentally alter *Bennett*'s requirements for final agency action. Plaintiff has not shown a plain or obvious error in the Court's decision. At most, Plaintiff has shown that it disagrees with the Court's interpretation of fact and law. In light of *Hawkes*, Plaintiff has failed to show a palpable defect in the Court's decision, and that a different disposition of the case must result. Therefore, the Court denies Plaintiff's motion for reconsideration.

An order will enter in accordance with this opinion.

Dated: December 14, 2016    /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE